IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GIOVANNI VASQUEZ                                                                      PLAINTIFF

v.                      Civil No. 5:18-cv-05010

CORPORAL JOSHUA HILL                                         DEFENDANT

**OPINION**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is incarcerated in the Washington County Detention Center (WCDC).

Plaintiff alleges that Corporal Hill used excessive force against him on December 7, 2017. Specifically, he maintains that Corporal Hill shot him with pepper spray while he was attempting to back away.

On July 16, 2018, Corporal Hill filed a Motion for Summary Judgment (ECF No. 12). That same day, an Order (ECF No. 16) was entered directing Plaintiff to file a response to the Motion for Summary Judgment by August 6, 2018.

To date, Plaintiff has not filed a response to the Motion for Summary Judgment. He has not requested an extension of time to file his response. No mail has been returned as undeliverable. Plaintiff has failed to comply with the Court's Order (ECF No. 16) requiring him to file his summary judgment response by August 6, 2018.

Plaintiff was advised that failure to comply with the Court's Order (ECF No. 16) would result in: (a) all of the facts set forth by the Defendants in the summary judgment papers being deemed admitted by Plaintiff, pursuant to Local Rule 56.1(c); and/or (b) shall subject this case to dismissal, without prejudice, pursuant to Local Rule 5.5(c)(2).

[1]

The Court must consider the facts set forth in Plaintiff's verified Complaint in ruling on the Summary Judgment Motion. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001). In this case, the Court also has Plaintiff's sworn deposition testimony.

As the Court in *Roberson* point out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id.* The Court will "piece[] together [Plaintiff's] version of the facts from the verified complaint [and Plaintiff's sworn testimony at his deposition]. Those portions of the Defendants' statement of material facts that do not conflict with [Plaintiff's verified complaint and sworn deposition testimony] are deemed admitted." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983 (D.S.D. Feb. 5, 2016).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case, the facts set forth by the Defendants are deemed admitted except to the extent contradicted by the verified complaint or Plaintiff's deposition testimony. The question is whether given the facts as pieced together by the Court, there are genuine issues of material fact as to whether Plaintiff's constitutional rights were violated.

## I. DISCUSSION

Defendant contends he is entitled to summary judgment for two reasons. First, he contends the force used was reasonable in the circumstances. Second, he maintains he is entitled to qualified immunity.

**(A). Facts**

Plaintiff was booked into the WCDC on April 14, 2015. (ECF No. 14-2 at 1).[1] His sole claim is that Corporal Hill used excessive force against him on December 7, 2017. Specifically, Plaintiff alleges that "while attempting to speak and back away from Cpl. Joshua Hill he shot me with the JPX when I was no threat to him or anyone around me." (ECF No. 1 at 4).

Plaintiff has sued Corporal Hill in his personal capacity only. (ECF No. 1 at 4)(ECF No. 14-9 at 34). Plaintiff was in pretrial status when the incident occurred.

The policies of the WCDC provide that non-deadly physical force may be used only when an attack by a detainee on a facility employee, visitor, or other detainee is occurring, is clearly imminent, or when other lesser means have failed to achieve a legitimate and necessary objective. (ECF No. 14-7 at 4). Only the amount of physical force necessary to maintain/regain control of a detainee shall be used. (*Id*).

The chemical agent Oleoresin Capsicum (OC) and projector are considered to be a use of non-deadly or less lethal force. (ECF No. 14-8 at 2); (ECF No. 14-10 at 1). The use of OC spray is authorized to, among other things, "defend the deputy or another from what the deputy reasonably believes is the imminent use of physical force, or to restore institutional integrity in a detention facility." (ECF No. 14-8 at 2).

The JPX 450 Cobra OC Delivery System, carried by Corporal Hill, uses a "pyrotechnic charge (gunpowder) to deploy" OC. (ECF No. 14-8 at 3). It is "modeled after a traditional firearm" but "does not propel a projectile." (*Id*). It propels OC solution from a multiple shot cartridge at the rate of "590 ft/second, or 405 MPH." (*Id*). It should be discharged when the subject is at a minimum range of 7 feet and a maximum range of 23 feet. (*Id*). The primary target area is the subject's face. (*Id*). Deputies are instructed to aim at the subject's nose. (*Id*. at

---

[1] All citations are to the CM/ECF document and page numbers.

3-4). Other "[a]cceptable secondary targets include the upper chest, neck or side of subject's head." (*Id*. at 4). Only deputies with the necessary training have access to the JPX 450 Cobra OC Delivery System. (*Id.* at 3).

Corporal Hill's incident report provides in part as follows:

> On December 7, 2017 at approximately 8:13 pm I was instructed to respond to A Pod, L Block for a possible fight or horseplay. I responded with Deputy B. Norris #562, when I entered the block I instructed all detainees to go to their cells. It was past time for them to be locked up. Detainee Melvin Gutierrez started mouthing Deputy Norris while Norris was walking up the stairs. Detainee Gutierrez stated, "I am going to kick you're a[ ]." Detainee Gutierrez took off his shirt and started going to the stairs as Deputy Norris was walking down. I started to the stairs and instructed him to get back. I pulled my issued JPX gun from my side pants pocket. Detainee Gutierrez and Detainee Giovanni Vasquez-Sanchez . . . started focusing their attention to me. Both detainees were stating I am going to kick you're a[ ]. Detainee Vasquez moved towards me, he stated "I going to kick your a[ ] m[    ]." He also stated "I am going to kill you." I pointed the JPX at Detainee Vasquez; he then stepped back but was still stating "I fixing to jump you a[ ]." I shot Detainee Vasquez with the JPX gun. Detainee Gutierrez then lunged towards me and I turned and shot him. Deputy Norris quickly jumped on Detainee Gutierrez and got him secured. Detainee Vasquez went to the ground holding his side. I instructed the other detainee[s] to go to their cells. Detainee Vasquez started to get up and I went over to him and forced him to the floor and put handcuffs on him.

(ECF No. 14-5 at 4). Corporal Hill also reported that Plaintiff was very angry, cussing him, and making threats against him as he was taking Plaintiff to be decontaminated. (*Id*).

In his deposition, Plaintiff testified that he came out of his cell because he heard the commotion between Gutierrez and Deputy Norris and thought Corporal Hill might taze Gutierrez or "shoot him with the JPX that he had." (ECF No. 14-9 at 13). Plaintiff testified that he was trying to talk to Corporal Hill to de-escalate the situation. (*Id.* at 14). Plaintiff testified that Corporal Hill was not listening and just kept telling Plaintiff to go back to his cell. (*Id.* at 15). Plaintiff denied making any threats towards Corporal Hill. (*Id.* at 27-28).

[4]

Plaintiff testified that when Corporal Hill pulled out his JPX, he tried to step back. (ECF No. 14-9 at 15). Plaintiff testified he was shot when he "was stepping back" to his cell. (*Id.* at 16). Plaintiff indicated the "pepper ball" hit him in the left side around his ribs and went all over his side. (*Id.* at 16-17). Deputy Norris just kept telling Plaintiff to get down on the ground, but Plaintiff did not obey because there was pepper spray all over the ground. (*Id.* at 17). Plaintiff indicated he told the deputies why he was not getting down. (*Id.* at 21). Plaintiff was then tackled to the ground. (*Id*. at 17).

Plaintiff testified that the pepper spray "split [his] skin open" and "irritated [his] skin" for "quite a long time" causing him to not be able to sleep for a couple of days. (ECF No. 14-9 at 23). Plaintiff testified that his skin was open in several spots and he had a scar from it. (*Id.* at 24). He believed it took a month or two to heal. (*Id*). Plaintiff did not go to the doctor because the last time he had been sprayed with OC, they just told him he was going to be fine and then charged him. (*Id.* at 23). He did not want to get charged for anything. (*Id*). He never asked for any pain medication. (*Id.* at 26).

In a grievance, Plaintiff described the incident as follows:

> on 12-7-17 cpl. Hill came in to l block at lock down and allowed officer Norris to talk down to an inmate provoking an altercation. we were instructed to go in our cells and i was a good 10 feet away from cpl hill when he pulled out his jpx and threatened to shoot me. i started to back away with my hands in a nonaggressive manner and he shot me. thats clearly use of excessive force and a direct violation of my rights. he shot me out of anger and did not get any form of reprimand. i want to know whats going on with this incident

(ECF No. 14-3 at 4).

Plaintiff was charged with a disciplinary violation of failure to obey the verbal orders of staff. (ECF No. 14-5 at 6). He was found guilty after admitting he did see and hear Corporal Hill ordering him to go to his cell. (*Id*).

[5]

Following the incident, Plaintiff requested that the video of the incident and any pictures taken following the incident be saved. (ECF No. 14-3 at 1). The quality of the pictures is poor. However, the Plaintiff's skin was injured on his left upper chest area. (ECF No. 14-6 at 2). There are approximately six dark areas where the skin appears to have been punctured. (*Id.* at 2 & 6). The remaining area is red and abraded. (*Id*).

The video[2] shows the inmates in the day-room area of the pod. Several tussles occur but it appears that no one is injured. At approximately 13:23, two guards enter the pod and one immediately goes upstairs. Corporal Hill moves to the bottom of the stairs leading to the second tier. He has his JPX drawn and pointed at Inmate Gutierrez who is on the stairs.

At approximately 13:27, Plaintiff leaves his cell, which is under the stairs, and approaches Corporal Hill until he comes within a few feet of Corporal Hill. Corporal Hill backs away from the stairwell and gestures for Plaintiff to go to his cell and continues gesturing. The two appear to be talking to each other. In the meantime, Inmate Gutierrez has left the bottom of the stairs and moves closer to Corporal Hill's position. Inmate Gutierrez is also saying something to Corporal Hill.

At 13:47, Corporal Hill takes up a shooter's stance and aims his JPX at the Plaintiff's chest. Plaintiff takes a couple of steps backward as the JPX is aimed at him. At 13:50, Plaintiff is hit on the left side of his chest. Corporal Hill immediately turns and shoots Inmate Gutierrez. Deputy Norris is behind Inmate Gutierrez. Deputy Norris takes Inmate Gutierrez to the ground and handcuffs him.

Plaintiff has gone to the back of the day room and has gotten partially on the floor. However, he is holding his upper body off the floor. At 14:28, Corporal Hill, with his JPX still

---

[2] The video has no audio.

in his hand and pointed at the Plaintiff, pushes Plaintiff's upper body to the ground. Plaintiff is then handcuffed.

### (B). Excessive Force

The Supreme Court has held that a pretrial detainee's excessive force claim should be analyzed under an objective reasonableness standard. *Kingsley v. Hendrickson*, et al, ___ U.S. ____, 135 S. Ct. 2466, 2473 (2015). The objective reasonableness of a use of force "turns on the 'facts and circumstances of each particular case.'" *Id.* (*quoting Graham v. Connor*, 490 U.S. 386, 396 (1989)). The determination should be made:

> from the perspective of a reasonable officer on the scene. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."

*Id.* (*quoting Bell v. Wolfish*, 441 U.S. 520, 540 (1979)). An action is objectively unreasonable if it is not reasonably related to legitimate governmental interests such as maintaining order and security. *Id.*

In determining whether a given use of force was reasonable or excessive, the Court held that the following may bear on the issue:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. The Court noted that the list was not exclusive but instead only illustrated the "types of objective circumstances potentially relevant to a determination of excessive force." *Id.*; *see also Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017).

The Plaintiff's and Defendants' versions of the facts differ, and if this was all that was before the Court, the Court would have no choice but to conclude a genuine issue of material fact existed as to whether the use of force was reasonable under the circumstances. However, the Court also has the video of the incident.

The video shows that Plaintiff left his cell and approached Corporal Hill. Corporal Hill is seen gesturing more than once for the Plaintiff to go to his cell. Plaintiff did not comply. Failure to comply with orders may be one circumstance that justifies the use of force to gain compliance. *See e.g., Hicks v.* Norwood, 640 F.3d 839, 842 (8th Cir. 2011). Whether non-compliance alone justifies the use of force depends on the surrounding circumstances such as whether the inmate is confined to a cell or already restrained in some manner as opposed to being free to move about. It also may depend on the order given. Obviously, an order to cease fighting would be much more likely to justify the use of force than an order for an inmate to sweep his cell. In the first example, there is clearly a legitimate concern for maintaining order and discipline and for the safety and security of inmates and staff. In the second example, the order is merely to enforce jail housekeeping rules. *See e.g., Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993)(not objectively reasonable to use stun gun to gain compliance with an order to sweep to an inmate to sweep his cell).

In *Hickey*, the Eighth Circuit rejected the argument that "the Constitution permits the use of summary force to compel compliance with any direct order given in a jail setting, and that such authority is necessary to maintain control of the institution." *Id.* at 759. In so doing it stated, that Defendants' argument "represents a fundamental misunderstanding of the law concerning the use of summary force in prison settings. The law does not authorize the day-to-day policing by stun gun." *Id.* The Eighth Circuit concluded that "summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or

officers, has been placed in jeopardy." *Id.*; *see also Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014)(clearly established that force used against inmates who were lying submissively, face-down would violated the Eighth Amendment); *Thompson v. Zimmerman*, 350 F.3d 734, 735 (8th Cir. 2003)(inmate no longer yelling or kicking the doors—no basis for a reasonable officer to believe force was needed at the time to prevent detainee from endangering himself or others).

Here, the video shows that Plaintiff is refusing orders to return to his cell. Although there is no audio, it is clear the Plaintiff is rapidly talking to Corporal Hill. At about the same time, Inmate Gutierrez left the stairs, approached Corporal Hill, and began rapidly talking to him. Neither Plaintiff nor Gutierrez are restrained in any manner. A number of other inmates, who are not restrained in any manner, are gathered around apparently listening to the interchange between Plaintiff, Gutierrez, and Corporal Hill. There is only one other officer present.

The entire incident from the time Plaintiff leaves his cell to approach Corporal Hill until the time the OC spray was used occurred within approximately twenty-three seconds. The situation was rapidly evolving. While Plaintiff did take a step or two back from Corporal Hill, he did so only as Corporal Hill drew his JPX and pointed it at Plaintiff and discharged the weapon. Clearly, the safety and security of the officers and the inmates was at issue. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)(force may be justified to make an inmate comply with a lawful order, but only if the inmate's noncompliance poses a threat to other persons or to prison security); *see also Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002)(same). Under these circumstances, it was reasonable for Corporal Hill to use some amount of force to gain compliance with his orders and to restore order. Corporal Hill is entitled to summary judgment in his favor.

### (C). Qualified Immunity

Analyzing a claim of qualified immunity requires a two-step inquiry. *Jones v. McNeese,* 675 F.3d 1158, 1161 (8th Cir. 2012). "An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." *Robinson v. Payton,* 791 F.3d 824, 828 (8th Cir. 2015). "Unless the answer to both these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer,* 583 F.3d 557, 564 (8th Cir. 2009).

In this case, the Court has answered the first question negatively. Defendant is therefore entitled to qualified immunity.

## II. CONCLUSION

For the reasons stated, this case is subject to dismissal for the following reasons: (1) Plaintiff's failure to obey the order of the Court, and his failure to comply with Local Rule 5.5(c)(2). Fed. R. Civ. P. 41(b); and (2) Defendant is entitled to summary judgment in his favor. A separate judgment will be entered in accordance with this Opinion

**IT IS SO ORDERED** this 1st day of October 2018.

/s/ P. K. Holmes, III
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE